IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>SIOSAIA TAKAI,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:11-cr-00542-CW<br><br>Judge Clark Waddoups |

Before the court is Defendant's motion to suppress.  (Dkt. No. 47.)  Among other things, Defendant seeks the suppression of all evidence obtained as a result of the execution of Search Warrant No. 1090081 issued by the Third District Court of the State of Utah on June 16, 2011, and has requested an evidentiary hearing regarding the validity of the search warrant.  For the reasons stated below, the court denies Defendant's request for an evidentiary hearing.

## BACKGROUND

The facts that are relevant to this matter are as follows.  On the morning of June 15, 2011, a robbery and shooting took place at a 7-Eleven store located at 483 South Redwood Road in Salt Lake City, Utah.  A video surveillance tape of the incident was obtained by the police.  Later that same day, the police received two investigative tips which led them to suspect a person with the nickname of "Spin" was responsible for the robbery and shooting.  A gang detective from the Salt Lake City Police Department identified "Spin" as Siosaia Takai, the Defendant.  Based on this and other information, the police obtained a search warrant for Defendant's residence in Bountiful, Utah.  During execution of the search warrant, the police found clothing that was

consistent with clothing worn by the suspect in the robbery and shoes with blood on them that matched the DNA of the victim who was shot during the robbery.

Defendant has filed a motion to suppress the evidence discovered as a result of the search warrant, arguing that the warrant was supported by an affidavit that contained statements that were deliberately false or exhibited a reckless disregard for the truth.  The court now considers whether Defendant is entitled to an evidentiary hearing concerning the validity of the search warrant.

<u>ANALYSIS</u>

Affidavits made in support of the procurement of a search warrant are presumed to be valid.  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  A defendant seeking to attack the validity of a search warrant on the basis of an invalid or untruthful supporting affidavit is only entitled to an evidentiary hearing upon an initial showing that allegations in the affidavit were deliberately false or made with a reckless disregard for the truth.  *Id.*  "The standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods."  *United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011).  "Allegations of negligence or innocent mistake are insufficient."  *Franks*, 438 U.S. at 171.  Even if a defendant meets his or her burden of showing deliberate falsehood or reckless disregard for the truth on the part of the affiant, an evidentiary hearing will only be allowed if the affidavit, after having all deliberately false or reckless statements removed, would be insufficient to support a finding of probable cause for the issuance of a search warrant.  *Id.* at 171-72.

In order to make the showing of deliberate falsehood or reckless disregard for the truth, defendants must offer proof.  *Cooper*, 654 F.3d at 1128.  They must point to specific portions of the warrant affidavit that they claim to be false and accompany those claims with a statement of

supporting reasons.  *Id.*  "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."  *Id.*

Defendant has not offered sufficient proof that any of the specific portions of the affidavit alleged to be false were made with the requisite intent to warrant an evidentiary hearing. Defendant first challenges the statement that the affiant "reviewed surveillance footage and observed the suspect enter the store and demand money."  Defendant argues that the officer did not observe or hear anyone demand money because the surveillance video did not contain any audio.  While Defendant has not provided the court with any proof that the surveillance video in question did not contain any audio, the government does not dispute that contention.  Instead, the government argues that the fact that the surveillance video in question did not contain audio is of no consequence because the affiant never claimed to hear the suspect in the video say anything. Instead, the affiant stated that he "reviewed" the footage and "observed" the suspect enter the store and demand money.  The government also argues that the affiant's statement that the surveillance video shows the clerk placing money and DVDs into a plastic bag supports the inference that the suspect demanded money upon entering the store.  *See* Affidavit Ex. A, 3 (Dkt. No. 53.)

The court has no reason to doubt the veracity of the affiant's statement that he observed the clerk placing money and DVD's in a plastic bag upon the suspect entering the store. Furthermore, it is not unreasonable for someone observing such conduct to infer that the suspect demanded money, even in the absence of audio.  The Defendant has not met his burden of proving that this specific portion of the affidavit was deliberately false or made with a reckless disregard for the truth.  Therefore, the Defendant cannot justify an evidentiary hearing by attacking the validity of the search warrant on the basis of this statement by the affiant.

Next, Defendant argues that the affiant's recital that the suspect ordered an employee into the office area, demanded that the employee turn off the surveillance system, and then shot him in the face with "one 9mm round" justifies an evidentiary hearing on the validity of the search warrant. Defendant again argues that these statements were made with reckless disregard for the truth because the surveillance video contained no audio and because there was no surveillance video of the events that occurred in the office area. The government argues that while the video did not contain any audio, the actions of the suspect and the clerk that can be observed in the video support the statements made by the affiant. Furthermore, it argues that the surveillance tape stopped shortly after the suspect and the clerk entered the office, supporting the inference that the suspect ordered the clerk to turn the surveillance system off.

Defendant has not met his burden of proving that the statements relating to the activities that took place after the suspect and the clerk entered the office area were deliberately false or made with a reckless disregard for the truth. Defendant must do more than merely raise questions about the foundation of statements made in the affidavit. He must offer proof of the affiant's intent when the statements were made. Defendant has offered no such proof and, for that reason, these statements cannot justify an evidentiary hearing on the validity of the search warrant.

Defendant next attacks the affiant's recital that the physical description of the individual in the aggravated robbery matched that of an individual involved in the theft of a 7-Eleven store one hour earlier. Defendant argues that the statement was false because the suspect in the 7-Eleven theft was described as "black or Polynesian" and wearing a white t-shirt, while the suspect in the later aggravated robbery was described as Polynesian and wearing a brown or dark t-shirt with tattoos on both forearms. The government argues that these statements could not

have been deliberately false or made with reckless disregard for the truth because details of the descriptions of both suspects were made in the affidavit, giving the judge who signed the warrant the opportunity to assess the affiant's belief that the descriptions matched.

Defendant has offered no proof, beyond the contents of the affidavit itself, that the affiant's statement regarding the description of the suspect in each robbery was deliberately false or made with a reckless disregard for the truth.  The descriptions of the suspects relied on by Defendant were contained in the affidavit and available for the judge who signed the warrant to evaluate.  It is not reasonable for this court to draw the inference that the affiant's statement that the descriptions matched was deliberately false or made with a reckless disregard for the truth.  It is not this court's place to second guess the judgment of the state judge who signed the warrant when considering a *Franks* proffer.  Because all of the evidence relied on by Defendant with regard to this statement was available to the state judge who signed the search warrant, it cannot be the basis for justifying an evidentiary hearing on the validity of the search warrant.

Defendant also argues that the affiant's recital regarding an investigative tip received from a concerned citizen by the Salt Lake Police Department warrants an evidentiary hearing. The affiant stated that the tipster indicated that she had received information from Julie Kuma, a friend of Defendant, that the person responsible for the aggravated robbery was an individual that goes by the nickname of "Spin."  Defendant argues that this statement was false because the caller indicated that Ms. Kuma only *suspected* that "Spin" was responsible for the aggravated robbery.  Additionally, Defendant argues that the affidavit incorrectly states that the tipster indicated that Ms. Kuma said she picked up "Spin" at 2:10 a.m. on June 15, 2011.  He argues that the tipster, in fact, indicated that that Ms. Kuma picked up "Spin" between 3:00 and 3:30 a.m.  To support his contention, Defendant cites a police report that describes a follow-up

interview held with the tipster after the search warrant was executed.  The police report does not indicate the contents of the tip described in the search warrant affidavit.  Defendant also relies on a report provided by the government to prove that the tipster indicated that Ms. Kuma only *suspected* that "Spin" was involved with the aggravated robbery.

Defendant's reliance on the police report describing the interview that occurred after the search warrant was executed is misplaced.  The police report does not describe the content of the tip at issue.  Defendant makes much of the fact that the police report indicates that the tipster told police in the follow-up interview that Ms. Kuma picked up "Spin" between 3:00 and 3:30 a.m. The fact that a witness makes a statement that is inconsistent with a prior statement is not proof that an affiant's recital about the earlier statement was deliberately false or made with reckless disregard for the truth.

The affiant's statement that the tipster indicated that Ms. Kuma told her that "Spin" was *responsible* for the aggravated robbery raises more significant questions.    While it is true that there is a substantive difference between saying that someone is "suspected" of committing a crime and saying that someone is "responsible" for committing a crime, it is not clear that the difference is material to a determination of whether there is probable cause for a search warrant. The affiant's characterization of the tip may have been less than careful, but Defendant must do more than prove that the affiant was not careful in preparing his affidavit.  Even if the affiant's inaccurate statement regarding the contents of the caller's tip would have had an impact on the state judge's probable cause determination, Defendant has the burden of proving that the statement was deliberately false or made with a reckless disregard for the truth.

Defendant has not met that burden.  The police report Defendant relies on does not contain any evidence of the content of the tip in question.  Additionally, a report of the tip

provided by the government explains the tipster's understanding of the contacts Ms. Kuma had with Defendant on the morning of the aggravated robbery, but makes no indication that Ms. Kuma only suspected Defendant of being involved.  Furthermore, even if the court assumes that the tipster indicated that Ms. Kuma only suspected that "Spin" was involved with the robbery, Defendant has not provided evidence sufficient to prove that the affiant's misstatement was deliberately false or made with a reckless disregard for the truth.  A less than careful statement in a warrant affidavit does not justify an evidentiary hearing on the validity of a search warrant.

Defendant next argues that an evidentiary hearing on the validity of the search warrant is justified by the affiant's material omission that Julie Kuma may possibly have been involved in the robbery as an accessory.  Defendant relies on the transcript of a police interview of Ms. Kuma where she admits that she washed pants that were left by Defendant in her car.  The government argues that this omission does not justify an evidentiary hearing on the validity of the search warrant because there is no evidence that the affiant was aware of the fact that Ms. Kuma washed Defendant's pants after they were left in her car.  The government also argues that including the statement in the affidavit would have bolstered Ms. Kuma's credibility because her admission that she washed the pants was a statement against her interest.

Defendant has not provided sufficient evidence to prove that the affiant was aware of Ms. Kuma's admission that she washed Defendant's pants prior to making the affidavit.  Defendant's counsel has indicated that the police interview of Ms. Kuma took place on June 16, 2011.  No evidence has been submitted, however, to prove the time at which that interview took place.  The record shows that the search warrant at issue was signed at 5:25 a.m. on June 16, 2011.  *See* Search Warrant Ex. B, 2 (Dkt. No. 54.)  The search warrant affidavit could not have been made after that time.  It is possible that the police interview of Julie Kuma on June 16, 2011 took place

after the search warrant affidavit was made.  Furthermore, there is no evidence that the affiant was present at the interview of Ms. Kuma or that he was aware of the contents of that interview.

Next, Defendant argues that the affiant's recital that the Salt Lake Police Department received a second tip stating that "Spin" was the person responsible for the robbery at issue provides grounds for an evidentiary hearing on the validity of the search warrant.  Defendant again argues that this statement was false, claiming that the second tipster also indicated that Ms. Kuma only stated that she suspected that Defendant was involved in the aggravated robbery.

A transcript of the call in question indicates that the second tipster informed police that she had "some information on the suspect" in the shooting at the 7-Eleven.  *See* Dispatch Call, Gov't Ex. 6, Hr'g Date April 17, 2012 (Dkt. No. 67.)  The caller proceeded to provide the police with a nickname, a description of tattoos on the suspect's arms, the place where the suspect resided, the suspect's ethnicity, the suspect's gang affiliation and the suspect's age.  The caller never indicated the source of the information and never mentioned the name, Julie Kuma.

While the affiant's claim that the second caller stated that "Spin" was responsible for the aggravated robbery at issue is not precise, Defendant has not provided proof that the inaccurate statement was made deliberately or with a reckless disregard for the truth.  To demonstrate a reckless disregard for the truth, Defendant must provide "evidence that the [affiant] in fact entertained serious doubts as to the truth of his allegations . . . [or] circumstances evincing obvious reasons to doubt the veracity of the allegations."  *Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994).  *See also United States v. Brown*, 631 F.3d 638, 645 (3rd Cir. 2011); *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984).  Defendant has not provided evidence of either.  The affiant may have been careless in stating that the caller indicated that "Spin" was responsible for the aggravated robbery, but there is not sufficient evidence to show

that his statement was reckless.  Proving a mere mistake is not sufficient to justify an evidentiary hearing on the validity of the search warrant.

Finally, Defendant argues that the affiant's statement of belief that Defendant was covering up his distinctive tattoos with his oversized white shirt during the robbery warrants an evidentiary hearing.  Defendant argues that this is not a statement of fact and should be redacted when considering whether there is sufficient probable cause to support a search warrant.  The government argues that there is no precedent for such a redaction and that, to the contrary, the Tenth Circuit has indicated that judges may rely on the opinion of law enforcement when reviewing an application for a search warrant.

In *United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009), the Tenth Circuit indicated that judges may "rely on the opinion of law enforcement officers as to where contraband or other evidence may be kept." (quotation marks and citation omitted).  The court reasoned that "In some cases, the 'additional evidence' linking an individual's suspected illegal activity to his home has thus come in the form of an affiant officer's statement that certain evidence—in his or her professional experience—is likely to be found in a defendant's residence." *Id.*

While the affiant's opinion in this case was not being offered to support a contention that evidence would be found in the home to be searched, a parallel between the opinion testimony allowed in *Biglow* and the opinion testimony contained in the affidavit at issue in this matter exists.  The affiant in this case was offering an opinion about the location of distinctive evidence that could be used to identify the suspect.  The statement was clearly labeled as the affiant's opinion and the judge who signed the search warrant could choose to rely on it or draw his own inferences based on the other evidence in the affidavit.

There is no support for Defendant's contention that an affiant's opinion must be disregarded when determining whether an affidavit contains sufficient probable cause for a search warrant.   Furthermore, Defendant has not provided the court with evidence that the affiant's statement of opinion is deliberately false or exhibits a reckless disregard for the truth. This statement cannot justify an evidentiary hearing on the validity of the search warrant.

## **CONCLUSION**

For the reasons stated above, the court hereby DENIES Defendant's request for an evidentiary hearing on the validity of Search Warrant No. 1090081, issued by the Third District Court of the State of Utah on June 16, 2011

DATED this 18th day of May, 2012.

BY THE COURT:

Clark Waddoups
United States District Judge